**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **KENNETH D. MURENA**, in his capacity as court-appointed Receiver of Drive Planning, LLC,<br><br>Plaintiff,<br><br>v.<br><br>**MARK HAYE,**<br>**TMRW SOLUTIONS, LLC,**<br>**THE TMRW SOCIETY IRV TRUST,**<br>**THE TMRW SOCIETY'S TRIBAL TRUST,**<br>**LONNIE MURPHY FINANCIAL & INS STRATEGIES,**<br>**LONNIE MURPHY,**<br>**LARRY M. SPEIR,**<br>**NEXT LEVEL WEALTH PLANNING,**<br>**AARON ("AJ") SHANKLIN,**<br>**BRIC BRADFORD,**<br>**JOHN LIN,**<br>**ZEN CATALYST PARTNERS, LLC,**<br>**CORNERSTONE LEGACY WEALTH, LLC,**<br>**CORNERSTONE WEALTH, LLC,**<br>**HECTOR HERRERA,**<br>**CONFERENCISTA PRO,**<br>**ROCA CONSTRUCTION, LLC,**<br>**ROCA GROUP, LLC,**<br>**ROCA FORTUNA, LLC,**<br>**PABLO CASAS,**<br>**HEIDI DRUMMOND,**<br>**MICHIAL MUMFORD,**<br>**SHERYL NOLAN,**<br>**STEPHANE-MAX BOSSE,** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No: 26-cv-03668-VMC |

**DANIEL R. STEERE,**
**BRADLEY JOHNSON,**
**JUANA FLORES,**
**CF RENOVATIONS, LLC**
**GERALD JUNDT,**
**CHRISTY GIROUX,**
**CAHG ENTERPRISES, LLC,**
**CAHG RD LLC,**
**NANCY CHOJNACKI,**
**SONNY HOME BUYERS INC.,**
**JOHN W. YOASH,**
**LORENZO LINARDUCCI,**
**DARLENE DE LA PLATA,**
**JEFFREY HOWARD,**
**WEALTH DNA, LLC,**
**DAVID MUNOZ,**
**SU BUENA SALUD, INC.,**
**MARTHA PATINO,**
**DELIA WILSON,**
**DARRELL QUE,**
**HI LEVERAGE FINANCIAL, LLC,**
**HEATHER TUBBS,**
**MICHAEL BRESHEARS,**
**RICHARD GREENMAN,**
**JASON STRUTHERS,**
**MONIQUE MYRICK,**
**NICHOLAS ST. JON,**
**ADVANCED AGENT SERVICES, INC.,**
**RUSSELL HOULE, AND**
**BEST FINANCIAL PARTNERS, LLC,**

Defendants.

---

# JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

**1. Description of Case:**

**(a) Describe briefly the nature of this action.**

This is an ancillary action brought by Kenneth D. Murena, in his capacity as Court-Appointed Receiver of Drive Planning, LLC, to avoid, recover, and disgorge more than $3.3 million in alleged improper commission payments and false profits received by Defendants in connection with their solicitation and recruitment of investors into Drive Planning. The Complaint asserts claims for actual fraudulent transfer, constructive fraudulent transfer, and unjust enrichment arising from transfers made during the operation of the Drive Planning Ponzi scheme.

Plaintiff alleges that Drive Planning transferred investor funds to Defendants without receiving reasonably equivalent value in return. Plaintiff seeks avoidance and recovery of the transfers, prejudgment interest, costs, and other legal and equitable relief. Defendants deny liability and assert defenses to Plaintiff's claims.

Defendant Mark Haye ("Haye") asserts that Haye denies liability and asserts that he acted in good faith and had no knowledge that Drive Planning was allegedly operating a fraudulent or Ponzi scheme. Haye's involvement was limited primarily to referrals and related communications, for which he received compensation he reasonably believed was lawful and for services of value. Haye was also a substantial investor in Drive Planning. His records reflect approximately $2,053,100 in

investments, and he disputes the Receiver's accounting and characterization of him as a net winner. Haye asserts that amounts received in connection with his investments were generally reinvested into additional promissory notes rather than retained as personal profits. Haye further asserts and preserves all defenses set forth in his Answer.

Defendant Lorenzo Linarducci does not agree with any characterization of him as an agent, promoter, salesperson, or person who solicited or recruited investors. Mr. Linarducci asserts that he performed administrative and operational services for Drive Planning and did not solicit investors.

Defendants Next Level Wealth Planning and Aaron Shanklin maintain that they were not involved in any fraudulent activity with Drive Planning and had no knowledge of a Ponzi scheme. Next Level Planning's involvement with Drive Planning was limited to loaning the company money with a promise of a return on the investment, thus becoming a victim of Drive Planning's scheme as well. Aaron Shanklin's involvement as a person was solely as a licensed insurance agent who assisted with advising Drive members on life insurance policies. All monies or commissions earned were by an even exchange of work or by contract, repayment of a loan with interest.

Defendant Daniel R. Steere denies liability and alleges that he acted in good faith in dealing with Drive Planning. Mr. Steere had no knowledge that Drive Planning

was operating a Ponzi scheme. He believed that he received compensation for his work and that this was a proper investment. The Plaintiff has miscalculated the amount Mr. Steere owes. Mr. Steere reinvested most of the proceeds, and was not compensated for personal profits as the Plaintiff/Receiver has calculated. Defendant Steere further asserts and preserves all defenses set forth in his answer.

Defendant Heather Tubbs asserts that Tubbs denies liability and asserts that she acted in good faith and had no knowledge that Drive Planning was allegedly operating a fraudulent or Ponzi scheme. Tubbs involvement was limited primarily to referrals and related communications, for which she received compensation she reasonably believed was lawful and for services of value. Tubbs was also an investor in Drive Planning. Her records reflect approximately 90.000 in investments, and she disputes the Receiver's accounting and characterization as a net winner. She asserts that amounts received in connection with his investments were generally reinvested into additional promissory notes rather than retained as personal profits. Tubbs further asserts and preserves all defenses set forth in the statement listed below. *See also* **Exhibit B.**

Defendant Heidi Drummond ("Drummond") denies liability and asserts that she acted in good faith and had no knowledge that Drive Planning was allegedly operating a fraudulent or Ponzi scheme. Drummond's involvement was limited to referrals and related communications, for which she received compensation she

reasonably believed was lawful and for an equivalent exchange of value. Drummond disputes the Receiver's characterization of her as an agent of Drive Planning and disputes the amount of any alleged profits. Drummond further asserts and preserves all defenses set forth in her Answer.

**(b) Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

In addition to subsection (a) above: On August 13, 2024, the Securities and Exchange Commission commenced an enforcement action against Drive Planning, LLC and related parties in the Northern District of Georgia in the action styled in SEC v. Drive Planning, LLC, et al., Case No. 1:24-cv-03583-VMC (the "SEC Action").

Plaintiff Kenneth D. Murena is the Court-Appointed Receiver for Drive Planning, LLC pursuant to orders entered in the SEC Action.

This action concerns transfers of more than $3.3 million made by Drive Planning to Defendants between 2020 and 2024. Defendants were agents or promoters who received payments characterized as commissions in connection with soliciting and recruiting investors into Drive Planning. Certain Defendants also invested funds with Drive Planning and received payments characterized as investment returns. The Receiver alleges that the commissions and investment returns at issue were funded by investor deposits rather than legitimate investment

activity.

The Receiver seeks to recover from each Defendant the amount by which the commissions and investment returns received by that Defendant exceeded any amounts the Defendant invested with Drive Planning. The Complaint asserts claims under the Georgia Uniform Voidable Transactions Act and Georgia common law for unjust enrichment.

Haye denies that the aggregate amounts alleged against all Defendants are attributable to him individually and disputes the Receiver's characterization of payments attributed to Haye as improper commissions or false profits.

Defendant Steere denies that the aggregate amount against all Defendants are attributable to him individually and disputes the Receiver's characterization of payments as improper commissions or false profits

Heather Tubbs also denies that the aggregate amounts alleged against all Defendants are attributable to her individually and disputes the Receiver's characterization of payments attributed to Tubbs as improper commissions or false profits. She has requested proof of the commissions and what they were paid for including a check that she can't determine if it was received or not.

Drummond denies that the aggregate amounts alleged against all Defendants are attributable to her individually and disputes the Receiver's characterization of payments to Drummond as improper commissions or false profits. Drummond also

disputes the alleged amount of profits she allegedly received.

Defendants Next Level Wealth Planning and AJ Shanklin's Brief List of Facts

On September 3rd 2019, Aaron Shanklin became a licensed health and life insurance agent with the state of Kentucky. In May of 2023 he established the company Next Level Wealth Planning with the Kentucky secretary of State under the designation Life Insurance Agents, Brokers & Services. When AJ Shnaklin began working as a consultant with Drive Planning, he only advised members about Life Insurance. Todd Burkhalter, however, held himself out to be a licensed life insurance broker and financial advisor and he and his team recruited people to join Drive Planning as members to invest in various investment vehicles. Mr. Shanklin assumed that Todd and the remaining Drive employees were licensed to do so.

Drive Planning consisted of teams of consultants that meet weekly to review clients' information to help them with financial planning. Aaron Shanklin only assisted with making sure the clients' life insurance plans were in good order. He nor Next Level Wealth Planning ever recruited members for Drive Planning investments or advised them to invest with the company. Nor did Aaron Shanklin or Next Level Wealth planning accept commissions based on investments in a fund.

On June 6th 2024, Drive Planning executed a promise to pay which included the terms that Next Level Wealth Planning would receive a return of 10% interest by September 6th 2024 for loaning $20,000 to Drive Planning, LLC. Again, any

payments to Next Level Wealth Planning were properly earned or due.

**(c) The legal issues to be tried are as follows:**

1. Whether the transfers at issue are avoidable and recoverable under the Georgia Uniform Voidable Transactions Act, O.C.G.A. §§ 18-2-70, et seq.

2. Whether Defendants received reasonably equivalent value in exchange for the transfers.

3. Whether Defendants acted in good faith with respect to the transfers.

4. Whether Plaintiff is entitled to recover under a theory of unjust enrichment.

5. The amount of any recovery, if any, to which Plaintiff is entitled.

6. Whether Plaintiff is entitled to pre-judgment interest, post-judgment interest, costs, attorneys' fees (if applicable), and other legal or equitable relief.

**(d) The cases listed below (include both style and action number) are:**

**(1) Pending Related Cases:** SEC v. Drive Planning, LLC, et al., Case No. 1:24-cv-03583-VMC (N.D. Ga.).

**(2) Previously Adjudicated Related Cases:** N/A

**2. This case is complex because it possesses one or more of the features listed below (please check):**

x (1) Unusually large number of parties
______ (2) Unusually large number of claims or defenses
______ (3) Factual issues are exceptionally complex
______ (4) Greater than normal volume of evidence
x (5) Extended discovery period is needed
______ (6) Problems locating or preserving evidence
______ (7) Pending parallel investigations or action by government
______ (8) Multiple use of experts
______ (9) Need for discovery outside United States boundaries

_____ (10) Existence of highly technical issues and proof
_____ (11) Unusually complex discovery of electronically stored information

**3. Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiff:**

Russell Landy, Esq., *Counsel for Plaintiff*

Adriana Pavon, Esq., *Counsel for Plaintiff*

**Represented Defendants:**

Allison M. Ballard, Esq. and Roger L. Scott, Esq., *Counsel for Defendants Lonnie Murphy Financial & Insurance Strategies and Lonnie Murphy*

S. Diane Claire, Esq., *Counsel for Next Level Wealth Planning and Aaron J. Shanklin*

Michael G. McGuffee, Esq., *Counsel for Defendant Heidi Drummond*

Mark L. Wells, Esq., *Counsel for Defendant Daniel R. Steere*

**4. Jurisdiction:**

**Is there any question regarding this Court's jurisdiction?**

__X_ Yes ___No

**If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority. *See* Exhibit A.**

**5. Parties to This Action:**

**(a)** The following persons are necessary parties who have not been joined:

N/A

**(b)** The following persons are improperly joined as parties:

N/A

**(c)** The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:

The original Complaint improperly identifies Lorenzo Linarducci as "Lorenzo Linarducci PLATA" in the case caption.

**(d)** The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

**6. Amendments to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in LR 15.

**(a)** List separately any amendments to the pleadings that the parties anticipate will be necessary:

N/A

**(b)** Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

**7. Filing Times for Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

**(a)** *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

**(b)** *Summary Judgment Motions:* within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

**(c)** *Other Limited Motions*: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

**(d)** *Motions Objecting to Expert Testimony:* Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

**8. Initial Disclosures:**

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).

The parties will provide initial disclosures pursuant to Fed. R. Civ. P. 26.

**9. Request for Scheduling Conference:**

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

Plaintiff does not request a scheduling conference.

**10. Discovery Period:**

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned

discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

1. The transfers made by Drive Planning, LLC to Defendants, including the amount, timing, receipt, use, disposition, tracing, and current location of the transferred funds;

2. Defendants' investments in Drive Planning, LLC, if any, and any payments, commissions, returns, or other funds Defendants received from Drive Planning;

3. Banking, financial, accounting, and other records concerning the transfers, investments, commissions, and other payments at issue;

4. The services or other value, if any, Defendants contend they provided to Drive Planning in exchange for the transfers at issue;

5. The relationship and dealings between Drive Planning and Defendants relating to the solicitation and recruitment of investors and the payment of commissions; and

6. Plaintiff's claims and Defendants' defenses, including issues concerning liability, damages, avoidance and recovery of the transfers, disgorgement, prejudgment interest, and other relief sought in this action.

7. The amount of Haye's investment principal, including promissory notes, renewals, rollovers and reinvestments; the characterization and calculation of payments attributed to Haye; whether Haye received any net profit after accounting for all documented investment principal and reinvestments; and the nature, extent, and reasonably equivalent value of services provided by Haye to Drive Planning, including compensation arrangements, referral activities,

transactions attributable to those services, and evidence concerning the reasonable or customary value of such services.

8. The amount of Steere's investment, including promissory notes, reinvestments payments to Steere, and the nature extent, and equivalent value of services provided to Drive Planning by Steere.

9. The amount of Tubbs investment principal, including promissory notes, renewals, rollovers and reinvestments; the characterization and calculation of payments attributed to Tubbs; whether Tubbs received any net profit after accounting for all documented investment principal and reinvestments; and the nature, extent, and reasonably equivalent value of services provided by Tubbs to Drive Planning, including compensation arrangements, referral activities, transactions attributable to those services, and evidence concerning the reasonable or customary value of such services.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

Based upon the number of parties, the parties request an extension of the discovery period through February 2027 to allow sufficient time to complete discovery.

Defendants Darrell D. Que, Michial Mumford, Larry Speir, Mike Breshears, and Bric Bradford request that initial discovery be conducted separately to the issues of standing and subject-matter jurisdiction before proceeding with discovery on the merits. The Plaintiff opposes such phased discovery.

**11. Discovery Limitation and Discovery of Electronically Stored Information:**

**(a)** What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

N/A

**(b)** Is any party seeking discovery of electronically stored information?

_X___ Yes ________ No

If Yes,

(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

The parties have discussed electronically stored information and anticipate that discovery may include emails, text messages, electronically stored financial records, banking records, accounting records, and other electronically stored information. The parties have not agreed to any specific limitations on the scope of ESI discovery at this time and reserve the right to seek appropriate limitations as discovery progresses.

(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

Parties request that electronically stored information be produced in native format to the fullest extent practicable, including emails, text messages, spreadsheets, accounting records, financial records, databases, and other electronically maintained files, together with all associated metadata. To the extent documents are not able to be produced in native format, they shall be produced in

a reasonably usable format that preserves metadata and does not materially degrade the information contained therein. The parties reserve the right to supplement or modify these provisions and to seek appropriate relief regarding the format of production of electronically stored information.

Haye reserves all objections concerning relevance, proportionality, burden, scope, time period, privilege, privacy, confidentiality, accessibility, search terms, custodians, and form of production, and reserves the right to seek appropriate limitations or protective relief.

Tubbs reserves all objections concerning relevance, proportionality, burden, scope, time period, privilege, privacy, confidentiality, accessibility, search terms, custodians, and form of production, and reserves the right to seek appropriate limitations or protective relief.

Plaintiff anticipates needing to enter into a Confidentiality Agreement as part of its production of discovery.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**12. Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

None at this time. The parties reserve the right to seek appropriate relief under Rules 16 and 26 as discovery progresses.

**13. Privileged or Protected Material:**

Do the parties anticipate any issues about claims for privilege or of protection with respect to trial-preparation materials?

________ Yes X__ No

The parties have discussed their views and proposals on any such issues, including the timing and method for complying with Rule 26(b)(5)(A) and whether, if they agree on a procedure to assert the claims after production, to ask the Court to include their agreement in an order under Federal Rule of Evidence 502. The parties have agreed as follows:

**14. Settlement Potential:**

**(a)** Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on September 1, 2026, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

Counsel for the Plaintiff has compiled all comments made by the various parties into this document and has circulated it for signature. Those signatories below agreed to have their electronic signature added to this document by the extended filing deadline. For those that did not, the Plaintiff will continue to seek their consent and will promptly update the Court.

For plaintiff: Lead counsel (signature*): /s/ Adriana M. Pavon*

For defendant: Lonnie Murphy Financial & Insurance Strategies and Lonnie Murphy (signature): /s/

For defendant: Next Level Wealth and Aaron J. Shanklin (signature): /s/ *S. Diane Claire, Esq.,*

For defendant: Heidi Drummond (signature): /s/ *Michael G. McGuffee, Esq.*

For defendant: Daniel R. Steere (signature): */s/ Mark L. Wells*

For defendant: Mark Haye (pro se) (signature): */s/ Mark Haye*

For defendant: Michial Mumford (pro se) (signature): /s/

For defendant: Lorenzo Linarducci (pro se) (signatura): */s/ Lorenzo Linarducci*

For defendant: Stephane-Max Bosse (pro se) (signature): */s/ Stephane-Max Bosse*

For defendant: Larry Speir (pro se) (signature): /s/

For defendant: Michael Breshears (pro se): /s/

For defendant: Heather Tubbs (pro se): /s/

For defendant: Bric Bradford (pro se): /s/

**(b)** All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

( X___) A possibility of settlement before discovery.
( X___) A possibility of settlement after discovery.
(______) A possibility of settlement, but a conference with the judge is needed.
(______) No possibility of settlement.

Defendant Steere is hopeful to settle this case before or after discovery.

There was little to no discussion of settlement at the scheduling conference

Defendant Tubbs states: There was no mention of settlement discussions. I

have reached out several times regarding this and I am still open. I have repeatedly stated this. I was told one would be requested based on information provided in a call and statements amounts which I sent over. Now more information is requested, I would like to discuss the need for this.

**(c)** Counsel (_X__) do or (___) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is to be determined at this time. The parties have also discussed the possibility of moving the Court to mediate before a magistrate judge.

**(d)** The following specific problems have created a hindrance to settlement of this case.

**15. Trial by Magistrate Judge:**

Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a) The parties (_______) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day ______________________, of 20___.

The parties (X) do not consent to having this case tried before a magistrate judge of this Court.

***See Above Signatures.***

**********

SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

IT IS SO ORDERED, this __ day of _____, 2026.

________________________________
UNITED STATES DISTRICT JUDGE

**Exhibit A**

Haye asserts that his Answer preserves jurisdictional defenses, including defenses concerning the scope and application of 28 U.S.C. §§ 754 and 1692.

Tubbs asserts that her Answer preserves jurisdictional defenses, including defenses concerning the scope and application of 28 U.S.C. §§ 754 and 1692.

## Exhibit B

## Response to Allegations in the Complaint by Heather Tubbs

While I respectfully disagree with the basis of most of the claims alleged in the complaint, I believe that many of the individuals involved—including myself—were victims of the circumstances.

I did not advertise, promote, or make promises to anyone, nor was I featured on any website offering or guaranteeing services or results. My role was limited to that of a referring partner, and I initially participated by investing my own personal funds.

After learning from one of the developers that certain commitments were not being fulfilled as represented, I ended my involvement and encouraged everyone I had referred to do the same. Although Todd continued contacting me for several years afterward, the trust had already been broken, and I did not resume my involvement.

I have been advised by Adriana Pavon to state that I am unopposed. However, I respectfully request that the amount sought for repayment be reduced and/or that I be permitted to satisfy any agreed-upon amount through a reasonable payment plan.

If the Court requires me to respond to each allegation individually, I would be willing to provide a more detailed response next week.

Thank you,
Heather Tubbs
770-367-*5298*